IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA K. CLEVENGER,

        Plaintiff,

v.                                                                                     Civil Action No.:2:16–CV–14
                                                                                                     (JUDGE BAILEY)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

### REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 1, 2016, the Plaintiff, Linda Clevenger ("Plaintiff"), by counsel, Montie VanNostrand, Esq., filed a complaint in this court to obtain judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. ECF No. 1.

The Plaintiff also filed a motion to proceed *in forma pauperis* that this court granted on March 10, 2016. ECF Nos. 4 & 5. The Commissioner filed her answer on May 16, 2016. ECF No. 8. The Plaintiff filed a Motion for Summary Judgment on June 30, 2016. ECF No. 13. The Commissioner filed her Motion for Summary Judgment on July 27, 2016. ECF No. 14.

For the reasons discussed below, the court recommends that the Plaintiff's Motion for Summary Judgement [ECF No. 13] be **DENIED** and the Commissioner's Motion for Summary Judgement [ECF No. 14] be **GRANTED**.

## II. FACTS

The Plaintiff initially applied for DIB and SSI benefits in January 2011 alleging a disability which began on March 15, 2010. R. 17. In April 2011, the Plaintiff was found "not disabled" and she did not appeal. R. 17. In August 2012, the Plaintiff reapplied for benefits alleging her continuing disability since August 2010. R. 17. The Plaintiff's application was denied at the initial and reconsideration levels on November 5, 2012 and January 28, 2013, respectively. R. 17.

On February 28, 2013, the Plaintiff submitted a timely request for a related hearing. R. 17. The ALJ considered the record and found new and material evidence sufficient to establish good cause to reopen and revise the unappealed April 2011 initial determination. R. 17. Therefore, the ALJ restricted the scope of further consideration to a determination as to the Plaintiff's disability status only since April 21, 2011, the day after the previous unfavorable, unappealed initial determination. R. 17.

A hearing was held on September 9, 2014. The Plaintiff and Vocational Expert ("VE"), Lawrence S. Ostrowski, Ph. D. testified at the hearing. R. 17. On October 22, 2014, the ALJ issued an unfavorable decision to the Plaintiff. R. 14. However, on July 8, 2015, the Plaintiff submitted a questionnaire from her treating physician to the Agency. R. 1379. The Appeals Counsel affirmed the ALJ's decision on January 8, 2016, finding that the additional evidence submitted by the Plaintiff does not provide a basis for changing the ALJ's decision. R. 1-2. The Plaintiff then timely brought her claim before this court.

## III. ALJ's FINDINGS

In determining whether the Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. The first step in the process is

determining whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b); 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c); 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d); 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of her impairments. §§ 404.1520(e); 416.920(e).

After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of her past relevant work. §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do her past relevant work, then she has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

Here, as a preliminary matter, the ALJ determined that the Plaintiff met the insured status requirements set forth in the Social Security Act through December 31, 2015. R. 18. At step one

3

of the sequential process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at anytime during the period at issue. R. 20. At step two, the ALJ found that the Plaintiff had the following severe impairments:

> [D]egenerative disc disease of the thoraco-lumbar spine, fibromyalgia / myalgia / myositis / polymyalgia rheumatica; osteoporosis of back and bilateral knees/hips; history of arthroscopic surgery, right knee; history of left carpal tunnel release; asthma/restrictive airway disease; high blood pressure; gastroesophageal reflux disease; Type II diabetes mellitus, uncomplicated, with polyneuropathy; morbid obesity; insomnia, by report; major depressive disorder; posttraumatic stress disorder (PTSD); and pain disorder associated with both psychological factors and general medical conditions.

R. 20. At the third step, the ALJ found that none of the Plaintiff's impairments met or medically equaled the severity of any of the impairments contained in the Listings. R. 20-21.

The ALJ then determined the Plaintiff's RFC:

> [T]o perform a range of work activity that: requires no more than a "light" level of physical exertion; requires no crawling, no kneeling, no climbing of ladders, ropes or scaffolds, and no more than occasional balancing, climbing of ramps or stairs, crouching or stooping; entails no concentrated exposure to temperature extremes, vibration, fumes, odors, dust, gases, poor ventilation or hazards (e.g., moving plant machinery, unprotected heights); is limited to simple unskilled duties that require no more than occasional interaction with others (including coworkers/supervisors and the public); and takes place within a low stress setting such as imposes no rapid production quotas/involves no assembly line duties.

R. 22-23. At step four, the ALJ found that the Plaintiff was unable to perform any past relevant work. R. 24. Furthermore, the ALJ found that the Plaintiff was a "younger individual" during the period at issue, the Plaintiff has only obtained a "limited" education but is able to communicate in English, and has a "skilled/semi-skilled" employment background but has acquired no particular work skills that are transferable to any job that remained within her RFC to perform during the period at issue. R. 24-25.

At step five the ALJ concluded that, "[c]onsider[ing] the [Plaintiff's] age, education, work

experience and prescribed [RFC], she has remained capable throughout the period at issue of performing jobs that exist in the significant numbers within the national economy." R. 25. "Therefore, a finding of 'not disabled' is appropriately reached within the [cited rules]." R. 25; *see also* 20 C.F.R. §§ 404.1560, 4040.1566(c), 416.960 and 416.966(c).

## IV. MOTIONS FOR SUMMARY JUDGMENT

**A.**     **Legal Standard**

    1.    <u>Summary Judgment</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

    2.    <u>Judicial Review</u>

This court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable

amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id.* (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

**B.     Discussion**

Plaintiff argues three assignments of error. First, the questionnaire submitted by her treating physician should have triggered a remand because it was new and material evidence. ECF No. 13 at 6. Second, the ALJ ignored severe impairments of interstitial cystitis with stress incontinence due to cystourethrocele. *Id.* at 7. Third, the ALJ failed to perform an adequate evaluation of the Listings

6

at step three of the sequential process. *Id*. at 8. The court is unpersuaded by the Plaintiff's arguments.

### 1. The Agency Did Not Err by Not Remanding the Case Despite the New Evidence

Following the ALJ's unfavorable decision, the Plaintiff submitted a questionnaire from her treating physician which was added to the record. R. 1379-88. The regulations allow a claimant to submit additional evidence that was not before the ALJ when seeking review by the Appeals Council. 20 C.F.R. §§ 404.968, 404.970(b). When faced with new and material evidence, "the Appeals Council then 'evaluate[s] the entire record including the new and material evidence.'" *Meyer v. Astrue*, 662 F.3d 700, 704-05 (4th Cir. 2011) (quoting 20 C.F.R. § 404.970(b)). "[I]f upon consideration of all the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusion not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." *Id*. at 705. "In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, provides an adequate explanation of the Commissioner's decision." *Turner v. Colvin*, Civil Action No. 0:14–cv–228–DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015) (citations omitted). A reviewing court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991).

Here, the Appeals Counsel stated that, "We found that this [new evidence] does not provide a basis for changing the [ALJ's] decision." R. 2. However, the Plaintiff argues that the Agency erred because the questionnaire is contrary to the Agency's decision thus, the case should have been

remanded for further consideration. ECF No. 13 at 6. This court is unpersuaded by the Plaintiff's argument.

The Plaintiff relies on *Meyer v. Astrue*, 662 F. 3d 700 to support her argument. In *Meyer*, the ALJ issued an unfavorable decision to the claimant. In doing so, "the ALJ emphasized that the record before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision." *Id*. at 707. The claimant subsequently obtained this missing evidence from his treating physician. *Id*. The Appeals Counsel made the new evidence part of the record but summarily denied review of the ALJ's decision. *Id*. The Fourth Circuit explained that the opinion from the treating physician corroborated another physician's opinion that the ALJ had rejected and conflicted with evidence that the ALJ had credited. *Id*. Thus, because the new evidence filled the "evidentiary gap" that influenced the ALJ's decision, the Fourth Circuit could not conduct the substantial evidence analysis and that remand was appropriate. *Id*.

However, *Meyer* was distinguished by this court in *Edgell v. Comm'r of Soc. Sec.*, No. 3:14 CV 82, 2015 WL 3868478, at *7 (N.D.W. Va. June 23, 2015). In *Edgell*, similarly to the claimant in *Meyer* and the Plaintiff here, the claimant submitted an opinion from a treating physician after the ALJ's decision yet the Appeals Counsel denied review. *Id*. However, the *Edgell* court found that the Appeals Counsel did not err because "[t]he ALJ's decision does not mention that the record lacked such evidence." *Id*. Thus, the new evidence did not fill an evidentiary gap. Furthermore, the court found that ALJ's decision was supported by substantial evidence because:

> [The] RFC reached by the ALJ [was] based on Edgell's testimony that he engaged in significant daily activities (including, as the ALJ emphasized, his frequent coaching and playing of golf), the records from Edgell's treating physicians that indicated Edgell improved with medical treatment and the state agency medical consultant's determination that Edgell had a "light" physical exertional capacity.

8

*Id.*

Here, as in *Edgell*, there is substantial evidence to support the ALJ's decision notwithstanding subsequent contrary evidence. Indeed the ALJ extensively explained his findings:

> [T]he claimant's September 2014 hearing testimony and other attributed assertions of record concerning the intensity, persistence and limiting effects of such impairment-related symptoms are herein found to be generally overstated and only partially credible. . . . [T]he claimant from 1997 to date has filed unsuccessfully for disability benefits on five different occasions – in August 1997, March 2001, December 2002, January 2011 and August 2012. . . . Yet, she testified that she operated a business from 2004 through 2011. Thus, her most lucrative years of employment on record transpired after she had been denied three times for disability benefits with multiple, related appeals (Exhibits B4D/1 and B6D/1-2). After her January 2011 benefit applications were denied in April 2011, she reapplied a fifth time in August 2012. Clearly the claimant has demonstrated an ongoing propensity to seek disability benefits in the absence of objective medical findings that are sufficient to support her longstanding contentions in that regards. As has been noted above, she was found by a State Agency consultant in April 2011 to evidence no "severe" psychological impairment but has since alleged significant debilitating depression and anxiety absent any convincing history of necessary or sought-after mental health treatment (Exhibits B16F, B29F, B70F and B76F). Her assertions do not appear as fully reliable with regard to her alleged symptoms and limitations. Rather they appear as overstated and calculated in significant part to facilitate secondary gain.
>
> The claimant has consistently – in connection with three relatively recent (April 2011, October 2012 and January 2013) State Agency assessments as to her physical [RFC] – been found capable of performing a significant range of "light" exertional work activity. She has undergone relatively minor left carpal tunnel release and right knee arthroscopic surgical procedures (Exhibits B66F, B72F, B75F and B80F). She is also morbidly obese. At 5'4 with reported weight ranging from 248 to 308 pounds, her Body Mass Index (BMI) has been indicated to range from 40 to 44.9 (Exhibits B3E/2, B20E/2, B71F/2 and B79F/11, 14). She was indicated in June 2014 to have lost 60 pounds within the preceding year, which should only serve to enhance her functionality. The undersigned has fully considered the claimant's body habitus and its incidental impact upon her symptoms and functionality (Social Security Ruling 02-1p). The claimant has evidence some mild-to-questionably moderate pathology of her thoraco-lumbar spine, and osteoporosis (Exhibits B73F/1-2). She has a history of asthma and restrictive lung defect (Exhibit B71F). She has uncomplicated, controlled Type II diabetes mellitus with some indications of polyneuropathy. In

addition to those conditions, the claimant's indicated diagnoses of "fibromyalgia" of "more than one year," with "good days and bad days." She offered that her body aches were "all over" and that she could not pinpoint one area. Her secondary complaint was diabetes that she had managed relatively successfully since 1998. As noted above, she reported a weight loss from 308 to 248 over the past year. The claimant has various aches and pains, none of which are seen as likely to preclude her ability for at least 12 months to perform such limited work as above.

For the reasons stated and in view of the evidence cited, and having accorded significant weight to the longitudinal assessments of six different State Agency psychological consultants since April 2011 the undersigned finds as above.

R. 23-24.

Unlike the ALJ in *Meyer*, the ALJ here did not indicate that additional evidence was needed. Rather the ALJ provided extensive reasons for his decision which are supported by the record. Therefore, this court finds, similarly to the *Edgell* court, that the Appeals Counsel did not err in failing to remand the case in light of new evidence.

2. The ALJ did not Err by Failing to Include the Plaintiff's Interstitial Cytitis as a Severe Impairment

The Plaintiff argues that the ALJ erred by failing to include her severe impairment of interstitial cystitis ("IC") – a chronic bladder problem – in his analysis. ECF No. 13 at 7. The court is unpersuaded by this argument.

The Plaintiff first argues that the ALJ failed at step two of the process by failing to include IC as a severe impairment. *Id*. Throughout her brief, the Plaintiff refers to her IC as "severe," however, there is little evidence that the IC is in fact severe. Indeed, a 2013 study showed that the Plaintiff did not have IC. R. 1269. When the Plaintiff was diagnosed with IC in April 2014, her doctor prescribed a change in diet and recommended that she return for a visit in one year which further indicates that the IC was not severe. R. 1346. Furthermore, the Plaintiff's 2014 diagnoses indicates that her symptoms are "consistent with mild [IC]." R. 1342. Therefore, there is substantial

evidence to support the ALJ's decision not to include the Plaintiff's IC as a severe impairment.

Second, the Plaintiff argues that the ALJ failed at steps four and five by failing to include the Plaintiff's IC in her RFC. There is evidence that the Plaintiff had IC, however, there is little, if any, evidence that the Plaintiff was limited by her IC. Indeed, the only indication in the record that the Plaintiff is limited by her IC is in a hypothetical question posed to the VE by the Plaintiff's attorney. The Plaintiff's attorney asked the VE whether there are jobs available for a hypothetical individual who needs to take frequent, unscheduled bathroom breaks. R. 89. The VE stated that:

> Well, the three jobs – it would really depend on how much she would – taking the breaks and going to the bathroom would take her off task in all three jobs. And if it were to exceed approximately ten percent of the work day, then the individual would not be able to meet the standards generally required by employers in terms of productivity and she would eventually lose her job.

R. 89. However, this hypothetical is inapposite because there is no evidence that the Plaintiff would need to take frequent, unscheduled bathroom breaks let alone be off task for ten percent of the day. Therefore, the court is unpersuaded by the Plaintiffs argument.

3.  The ALJ did not Fail to Perform an Adequate Step Thee Evaluation

The Plaintiff argues that the ALJ's failed to perform an adequate evaluation at step three of the process. Specifically, the Plaintiff argues first, that the ALJ failed to evaluate listing 14.09 regarding her fibromyalgia and second, that the ALJ erred by failing to call a medical expert. For the reasons below, the court finds these arguments unpersuasive.

   a.  The ALJ did not Err in Evaluating the Listings

The ALJ found that the Plaintiff has a severe impairment of fibromyalgia. R. 20. Fibromyalgia is not a listed impairment, however, the regulations specify that when an impairment

is not listed in appendix 1, "[the agency] will compare your findings with those closely analogous listed impairments." 20 C.F.R. 416.926(b)(ii)(2). Social Security Ruling ("SSR") 12-2p further explains that "[fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step [three], therefore, [the agency] determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis)." The Plaintiff argues that because there is ample evidence in the record to support a determination that the Plaintiff's impairments meet or equals one of the listed impairments the ALJ must identify "the relevant listed impairments" and compare "each of the listed criteria to the evidence." *Cook v. Heckler*, 783 F. 2d 1168, 1173 (4th Cir. 1986). Thus, the Plaintiff argues, the ALJ erred by failing to compare her impairments with those of 14.09D.

The Plaintiff's assertion that the ALJ erred by not determining whether her impairments met Listing 14.09D is misplaced. SSR 12-2p provides 14.09D merely as an example thus, the ALJ does not err per se by failing to analyze 14.09D. Indeed listing 14.06B (undifferentiated and mixed connective tissue disease) and 14.09D (inflammatory arthritis) require the same criteria. *See Thao v. Colvin*, No. 14-1793, 2015 WL 4748022 at *5 (D. Colo. Aug. 12) (finding that the ALJ complied with SSR 12-2p by considering whether the plaintiff's fibromyalgia equaled 14.06). Here, the ALJ stated that the assessments by four different state agency medical consultants were accorded great weight. R. 21. Each of these four assessments considered Listing 14.06. R. 103, 117, 134, and 149. Therefore, the ALJ complied with the law by analyzing the Plaintiff's fibromyalgia with 14.06.

Furthermore, the Plaintiff's brief re-alleges the Plaintiff's detailed medical evidence that could support a finding that her fibromyalgia equaled the Listings. ECF No. 13 at 10-13. However, this argument is contrary to the substantial evidence standard of review. Indeed, substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. at 664–65. This court will not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (citations omitted). As explained above, there is relevant evidence that this court finds adequate to support the ALJ's conclusion.

      b.       *The ALJ did not Err by Failing to Call a Medical Expert*

The Plaintiff argues that SSR 96-6p requires an ALJ to obtain an updated medical expert opinion regarding whether the claimant equals a Listing. However, this is an incomplete reading of SSR 96-6p. SSR 96-6p provides that:

> [An ALJ] must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> ●     When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> ●     When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Therefore, a complete reading of SSR 96-6p shows that the it is the ALJ's determination of whether the new evidence suggests that a judgment of equivalence may be reasonable which triggers the need to call a medical expert. Here, as discussed in part a of this section, there is substantial evidence that supports the ALJ's decision that the new evidence would not reasonably lead to a judgment of equivalence. Thus, the court finds that the Plaintiff's argument is without merit.

## V. RECOMMENDATION

Based on the foregoing, the court concludes that the ALJ's decision complied with

the applicable law and regulations, and it was based on substantial evidence. Accordingly, the court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 13] Motion for Summary Judgment be **DENIED**; and

2. Commissioner's [ECF No. 14] Motion for Summary Judgment be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia

DATED: August 31, 2016   /s/ *James E. Seibert*
**JAMES E. SEIBERT**
**U.S. MAGISTRATE JUDGE**